Good morning. May it please the court, Stephen Kirsch on behalf of Oral Thompson. I want to start by saying that in these types of multiple party, complex conspiracy cases, typically involving narcotics, there's a tremendous potential for prejudice to each of the parties individually, based upon a spillover of evidence that applies to one person that doesn't apply to another person. And there's also the potential for prejudice with respect to Drew 404B evidence that comes in. I've submitted in this court with respect to Mr. Thompson I can tell how long you've been doing this when you refer to it as Drew evidence. I appreciate that. Excuse my cold. So I would submit to the court that the case against Oral Thompson was not, the governance papers kept saying that it was an overwhelming case. It was not by any means an overwhelming case. It was an underwhelming case, I would submit to the court. Number one, there was not a single mention of the United States by Mr. Thompson. He's never engaged in any conversation where he references the United States. And I submit the major piece of evidence is the linchpin in the government's case, and that's Dario Davis. Davis is the pilot of the airplane that landed with the contraband, and he was arrested on the scene. And Dario Davis also was the nephew of the co-appellant, Mr. Knowles. Dario Davis was a cooperating witness. He was granted immunity. He was testifying under protection. He never once mentioned Oral Thompson. He never mentioned having contact with Oral Thompson, never mentioned knowing for Oral Thompson, never mentioned his name, did not have a single reference to make with respect to Oral Thompson. So I submit to the court that the government had to rely upon the Drew evidence in order to make the conviction against Oral Thompson stand. And the Drew evidence we submit to the court in this case was, number one, it was highly prejudicial because it went, I would submit, solely to propensity. I don't know what Drew evidence is. Can you explain what it is to me? Sorry. Other crimes evidence. Okay. All right. It's on a D.C. Court of Appeals case. Okay. So that's a 404B evidence. 404B. It's the same. All right. Thank you. I've always thought it to be the same. You know, as many times as I've seen 404B cases, I've come to the conclusion that almost never is there a case where the government actually submits it for propensity. There's always about nine different ways to get around that, whether it's knowledge, intent, or so forth. And why isn't one of those ways to get around it relevant in this case? Well, I first thought with the notion that we have to factor in Federal Rule of Evidence 403 in any analysis of the 404B evidence. And when we factor in that analysis, the prejudicial effect in the context of the 404B evidence that was submitted was enormous, and it wasn't probative. For instance, the court allowed in testimony about boat shipments of narcotics in the 1980s. This is from, I believe it's from Matthew Ferguson, a Maine government cooperator. So it's an entirely different means of transportation. There's no temporal nexus. And the only abuse the jury could have made of that evidence is for propensity or bad character, which is also impermissible under the Federal Rules. And again, without that evidence, I do not believe this can, again, within the context of Dario Davis, the primary witness, there would have been no way for the government to have even gotten this case to the jury. So there was no way for the defendant at trial to rebut this evidence. This was evidence that the boat shipments were 25 years ago. There's no way he could have put on, or he didn't put on, I don't know if he could have. I don't believe he could have. Was that evidence put in just to show how the key folks in this conspiracy first met? No, it was supposed to, it was put in to show knowledge and intent. And didn't it show how they first met? Well, yes, it did show how Mr. Ferguson and Mr. Thompson first met, yes. Did the government say, we're not using that to show that? We're only using it to show knowledge and intent? I believe the court made its findings that it was used for the purpose of knowledge and intent. It clearly was introduced to show an association between the two men. Right, that's how they met, that's how it all started. Why is that relevant in a conspiracy case? It may be, there may be some marginal relevance, but when we factor in 403 and the prejudicial effect of having a jury hear about Mr. Thompson engaging in this. What's our scope of review on that? Excuse me? What's our scope of review? Abusive discretion. And in the context of this case, I would say it was an abusive discretion because, again, also take into account what I would submit to the court was a very underwhelming case against Mr. Thompson. And then you had this overwhelming amount of 404B evidence that comes into the case. The combination of those two clearly suggests that it should not have been allowed to come in. Mr. Thompson was never in any way connected to the United States. And this was, he was never connected to the N-157PA airplane. He was never engaged in negotiating that airplane. He was never alleged to have flown that airplane. So there really was a very attenuated nexus with Mr. Thompson. Have you argued here, and if you did, I'm sorry, I'm not understanding it. Or did you argue below that there's a mens rea requirement with respect to knowledge that a U.S. aircraft is involved? That sounds more like what your argument is. You didn't know there was any connection to the U.S. here at all. I'm not arguing that there is a mens rea requirement. What I am arguing is the lack of his knowledge. Why would it matter? Why would it matter? There's not a mens rea requirement. It's not a requirement, but in reviewing the totality of the circumstances, the evidence, it's one factor I would submit to the court that the court can take into account in weighing the probative value against the prejudicial effect of this evidence. And then I'll move on very quickly, because I did reserve two minutes, to the experts and the lay witnesses. And I submit that both Matthew Ferguson and Anton Johnson, who were both permitted to testify about coded language, and they both had very specific testimony about coded language, that there was no foundation for them to be testifying, because they were lay witnesses. They weren't noticed as expert witnesses. The defendant did not have the opportunity to challenge their testimony, to bring in another expert, to provide a counter view of what these people said. And this Court has made it clear in Williams that if you're testifying about something that is not from your knowledge of that particular conspiracy, you're an expert. And I submit to the Court, this Court, that the trial court had him permitting that testimony. And I'll see my five and a half minutes is up. Thank you. Good morning, Your Honors. My name is Matthew D. Kaplan, and I am here for Appellant Dwight Knowles. As a principal argument, I'm going to deal with the extraterritoriality issues that we've argued in our briefs. One of the principal arguments we make is that the conspiracy provision that is issued here, 201 U.S.C. 963, does not apply extraterritorially. As you know, a fundamental principle for Morrison and R.J.R. Nabisco and all the other cases coming from Morrison, is that absent clearly expressed congressional intent, U.S. laws don't apply overseas. Another principle that comes from both of those cases is that when a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to that particular statute. That's the Supreme Court case in which that exact point is made in Cobell. It's made in, Your Honor, I believe both in R.J.R. Nabisco and in the Morrison case. Cobell said it too. In Cobell as well, yes. In light of those two axioms of statutory interpretation, in our view the most logical interpretation of the statutory structure that's relevant here, is that Section 959, which is the substantive offense, at least aspects of Section 959, apply outside the United States, are extraterritorial. What do you think of the two circuit court cases contrary to your view? Do you not hear me? The two circuit court cases contrary? Second Circuit, as I recall. There's an FSCAM. There are two circuit court cases with a contrary interpretation of that. I believe both of those cases focus on the substantive offense, 959. That's what I mean. But I'm arguing. You're only arguing on the conspiracy. You're not arguing the basic statute. We're arguing the basic statute as well. I guess the argument that I'm making. My own inclination is that you have a better argument on the basic statute. Certainly, I can address that, Your Honor, as well. Well, you know, our cases, both Ali and the other one, strongly suggest that if the substantive offense is extraterritorial, almost surely the conspiracy charge will also be extraterritorial. So if I were you, I'm more impressed by the basic statutory argument. We'll focus on the basic rule. I'll take your guidance, Your Honor. As it happens to be my view. It may not be the view of my colleagues. I would just emphasize that Ali actually, I think, stands for the proposition. I mean, Ali, there was a conspiracy statute that was found not to apply to that case. And I think that's the same thing. Well, it applied in part. I sat on that one. The hostage-taking provision. But the hostage-taking conspiracy provision said explicitly that it applies overseas. Under the 959B substantive argument, the statute groups 959B offenses into two separate categories. 959B1 is manufacturing or distribution of a controlled substance. And B2 is possessing a controlled substance with intent to distribute. The extraterritorial provision in 959C provides that there is jurisdiction for or provides that there's extraterritorial applicability for acts of manufacture or distribution, which directly parallels the statutory language in 959C, 959B1. In other words, there's a clear parallelism between. And what do the words acts of do in C? Because those are not actually in B. Are they meant to, does the words acts of expand manufacture or distribute? Or do they narrow? Or do they really not do any work? I don't think they do, that they modify the statute. But I think the more important point is whatever they do is ambiguous. And to the extent the statute is ambiguous, I think it's got to be interpreted against extraterritorial application of the statute. All right, let me ask another question then. Let's suppose I agree with you entirely on the statutory and disagree with the circuit, the other two circuits. Think that they are policy driven rather than textually driven. What about the question of either harmless error or plain error review? What about the proposition that even if possession is not extraterritorial, what about the argument the government makes that the evidence is overwhelming with respect to manufacture and distribution and a conspiracy for that purpose, particularly distribution? The government takes us to task for not objecting to that specific jury instruction. But I don't think it was necessary in this case. But even so, it's still a harmless error question, right? Even if you're right about that. I think if the government could show that the case was overwhelming, which I don't think is the case. Why don't you think that's true in this case? I mean, what about the evidence goes specifically to possession as opposed to distribution? I don't think there was any evidence of – they're closely related. No, I'm trying hard. I didn't see any evidence that went to the jury that could be thought to be exclusively possession with the intention to distribute as opposed to distribution. And if that's true, and we think there's adequate evidence to convict, why isn't it harmless error? I think it's harmless error because I don't – You mean you think it's not harmless error? I'm sorry? You think it's not harmless error? I think it's not harmless error. Harmful error. It was harmful error, yes. I think that's a decision for the jury to make. Well, I'm still – but if all the evidence that went to the jury was distribution, why isn't it harmless? I think it's for the jury to decide. I can't give you a better answer than that. That's not a very good answer. Would possession of large amounts of drugs like were at issue here, would that be a sufficient overt act to support a conspiracy for distribution? Possession of a large amount? The amount here was large enough to support distribution. It's not like it was a small possession amount of drugs that was at issue, right? We agree on that. Well, I don't know that the government ever approved a specific amount. The government asserted – There's no claim that they were only dealing with a possession amount of drugs here. That's correct. That is correct. All right. And if someone had just charged a conspiracy to distribute, could they use the act of possession, evidence of possession, would that be a sufficient overt act by itself to establish a conspiracy? Assuming the other elements of a conspiracy are there, if the only overt act were the possession. I think they probably could, Your Honor. Okay. If there are no further questions. Good morning, Your Honors, and may it please the Court, Michael Grocker from the Department of Justice on behalf of the United States. Let me pick up with the extraterritorial arguments and then I'll turn to the evidentiary issues at the back end. In this case, Judge Jackson conducted a thorough analysis of the operative statutory provisions, both the substantive provision in 959 and the conspiracy provision in 963. And she also drew upon Judge Bates' thoughtful analysis of the same issues in the Boddie case, which is cited in our briefs. And she concluded that, correctly in our view, that the presumption against extraterritoriality had been rebutted for both statutes. We think those conclusions are both correct. Let me start with the 959 that Judge Silderman, Your Honor, was asking about. Even beyond the fact that the Second and Fifth Circuits have both found that provision to be extraterritorial, and we think their reasoning is fundamentally sound, if you just look at the actual text of the statute, it leads you in that conclusion. There are numerous indicators of an extraterritorial intent. Judge Millett, you were asking about the words, acts of. In our view, that broadens. In response to your question, that broadens the bases. Because although the explicit extraterritoriality clause says acts of manufacture or distribution, by no means does it say the manufacture or the distribution. Acts of is a broader concept. And as Judge Jackson found, possession with intent to distribute fits comfortably as an act of distribution. Now, what the defendant's argument is really saying is that, well, unless the statute uses the magic word possession, then it doesn't apply extraterritorially. But the Supreme Court has told us in RJR, and five other circuits that have considered the issue, which are all cited in our brief, have made clear, this is not a clear statement test. They don't have to be explicit. The question is simply whether Congress, looking at the statute as a whole, drawing on the text, the history, and the purposes, has made clear it manifests... Can you imagine an intelligent lawyer writing this particular statute, specifically providing in 959B1 that it's extraterritorial, and right below that is 959B2, which is not mentioned? Can you imagine any intelligent lawyer writing that that way, intending that the word acts is to pick up 959B2? Wouldn't you say that would be a grotesquely incompetent lawyer writing it that way to mean that? I think it's not... Would you hire somebody in the Justice Department who wrote that? I'd have to look carefully at their other body of work, Your Honor. But I would say this. I think the feature that we're dealing with here is because the provisions were adopted 16 years apart, right? So the original provisions said manufacture or distribute. It doesn't matter. I understand. When the counsel wrote 951B... Right. I understand. But it does say this section. Because if we're going to focus on what Congress... Would you say an intelligent lawyer would have written it that way, to have this section apply? Let me try to... It's not the most intelligent way to write it, but I don't think it defeats the argument that the statute applies extraterritorially when you read the statute as a whole. If we're just going to focus on this language, I agree with you. As the Second Circuit said, it's inartful drafting. But what we have to do is look at the other... For example, let's look at the preparatory language in B talks about a U.S. nexus. What about the... You know, you made much of the venue provision, right? You did something, though, that sort of surprised me for a Justice Department brief. You didn't mention the second portion of the venue statute, which provides that you can be tried in the District of Columbia, and that could easily be used for possession with intent to distribute, whereas the port of entry would be extraterritorial and the second one would not be extraterritorial. Well, first of all, Your Honor, I... And you didn't mention that in your discussion of venue, which sort of surprised me. Well, I apologize. That was not an acceptable position. It wasn't done to deceive the court or hide anything. What I was trying to do is highlight the fact that, regardless of whether D.C. is a proper venue, our focus was on the fact that the statute, because it uses the phrase point of entry, it's necessarily contemplating... For one part of the venue. But an intelligent writer could have had the D.C. for possession with intent to distribute, and that was not extraterritorial, but it could be tried in the District of Columbia. Perhaps. But we still also have the prefatory clause in B, which talks about the U.S. nexus. The statute says this section... Hang on. Yeah, I'm sorry. Sorry. If the possession with intent to distribute is solely domestic conduct... Right. ...would it be permissible for Congress to say that it has to be... It'll be tried? The venue for that will be the District of Columbia, even if someone's doing it in Texas or Arizona? I'm sorry. I didn't understand. The argument is D.C. is where this domestic, non-extraterritorial crime will be tried. Right. Is that a logical way to read a venue position, to assume that they wanted people who committed this possession with intent to distribute in Alaska or Hawaii... Right. ...can be prosecuted in the District of Columbia? No, that's not. It's not. There's also... Why? Are you saying it's unconstitutional? No, I'm not saying it's unconstitutional. I'm just saying it should be read in a different way that avoids any of those concerns. But I think the... Why would Congress want it tried in the District of Columbia if it's a domestic crime committed in Alaska or Hawaii? I'm sorry. Why would Congress? Yes. I don't know. That wouldn't make a whole lot of sense. But what I would say, Your Honor, is that we probably wouldn't resort... If 959b2 was really domestic, I don't think the government would resort to that provision in possession cases because it's already covered by 841. Right. So I think our broad... But does acts of really broaden or narrow? If I think I'm building a home, if I say I'm building a home... Right. ...now that could mean I run a construction company that builds homes, I'm in a development country, or it could mean I'm hammering pieces of wood together. But if someone said acts of building a home... Right. ...that wouldn't sound like just being the development company. That would sound like the construction workers, wouldn't it? I mean, I understand Your Honor's question. I think, in a sense, yes. I think the way... So that acts of building a home wouldn't include buying a hammer? I think there's a plausible argument that it would. Possessing a hammer? And you could even include taking training in high school to learn how to build a home. It's expansive, yes. I think it is an expansive concept. I mean, I think if Congress wanted to narrow it, they certainly could have narrowed it. They could have written the manufacturer, the distribution. But I think acts of has to mean something. And I think the most natural understanding is it's broader. But, again, just to sort of circle back on this point, the inclusion of the U.S. nexus language in 959B's preparatory clause, which applies to B-1 and B-2, right? It specifically requires either citizenship or the use of a U.S.-registered aircraft. And as the Second Circuit pointed out in EPSCAM, it's awfully difficult to understand what purpose that language would have if Congress wasn't legislating with the assumption that the statute applied extraterritorially. So... It's a good... It's a decent argument. But I'm not persuaded. I understand. What about the question of whether or not the error is harmless? I certainly agree, Your Honor, that for the reasons you eloquently identified, this would be harmless error. I think all of the evidence went to distribution. And I think if the jury had been properly instructed on the two objects, if the supposedly invalid object had not been submitted, the results here would be the same. I'm a little puzzled about the jury instruction because you're asking for a jury instruction on a legal question, rather than a factual issue. Well, it's whether the theory... But I know, but put that aside. Yeah. Your argument is that all the evidence that... Assuming it's sufficient, of course, which counsel argues it's not, and he argues 404, but assuming that that's incorrect, we agree that the evidence all went to distribution. There's no separate evidence of possession with intention to distribute. Right. Is that correct? I'm sorry, you said assuming we agree with that. Yes, the evidence went to distribution. Yes. So then is it basically your argument it's harmless? Yes. But, I mean, our threshold position is that we think... I mean, if we want to be doctrinally pure, we think it should be plain error review. You think it's... What's the difference? Well, two differences. One, if it's plain error review... The burden of proof, it switches. Burden of proof and clear or obvious. And we don't think it's clear or obvious when the second and fifth circuits... Why wasn't the objection to the indictment sufficient to make an objection? A fair question. First of all, I don't think anything in rule... I try to only answer. I'm sorry. I don't think that anything in rule 30D, which requires an objection to the jury instructions, excuses a defendant from raising a new objection just because they made a pretrial motion. But I think the more practical point, Chief Judge Garland, is this. If the defendants had raised their objection and apprised the court and the government that they were continuing to maintain that possession doesn't apply extraterritorially, it might have alerted the parties in the court that this might be a situation where we want to use a special verdict. And that could have been something that we could have discussed instead of the general verdict that led us into this Yates-type situation. So I think it's far from an empty formalism. I think that if they had objected in a timely manner to the instructions, we might not find ourselves in this situation. It's interesting. That's a point you did not make in your brief. I'm sorry? No, I did say it in my brief. You didn't say anything about time... The special verdict? The special verdict. Correct. We did not. But we did say that we think plain error should apply. And I want to just expound on why we think. But again, the result in prior cases, this court has declined to decide whether at the intersection of plain error review and Yates because it has said, well, in any case, even if harmless error applied, the result is the same. The court is certainly free to follow that path here. We don't think it would change the outcome regardless of who's burdened. I'm having a little trouble with what you just said. Sure. You're talking about Perkins or something? What case do you think we've been assigned? Perkins is barely written. And since Perkins, we have Skilling in which the Supreme Court said harmless error applies. So what's the problem? I apologize. What's missing here? I apologize. No, Skilling and Hedgepeth both say that it's not structural error. But Skilling was a harmless error case. I'm talking about plain error and whether or not they had to object to the jury instructions. So I don't think there's any dispute among the parties, or I take it from the court's questions, that prejudice review applies. The only question is which framework are we looking at it through? Is it plain error because they didn't object to the instructions, or is, as Your Honor's question posed, is their pretrial motion sufficient? Do you know of any cases that resolve the question of pretrial motions being sufficient to transform? No. I did not find any, Your Honor. The court said so in Pope v. Illinois, although I don't know whether it was raised. But in that case, the indictment was challenged as unconstitutional. The Supreme Court. Right. Yes. Challenged as unconstitutional, and the court then only applied harmless error Right, but I don't think that was a dual object case. Why should that make any difference, whether it's a dual object case? I guess it does. The question is whether it's sufficient to raise. It wasn't, you're right. Right. But the only question is, is it sufficient to raise the objection to transform from plain error to harmless error? Well, if that is Pope's holding, and I take, Your Honor, at face value, then yes, then this would be a harmless error case. And I guess the failure, I don't know how that intersects with Rule 30D. We haven't looked at that issue. But I would say, again, we can pretermit all these issues and simply decide this case on a harmless error ground. Because, look, the government's case at trial here was built around five cooperating witnesses, all who testified about the inner workings of this conspiracy, about Mr. Thomson's role as the broker, about Mr. Knowles' role in securing aircraft, and not just any aircraft, but they specifically sought the U.S. registered aircraft because they're perceived as, if not in truth, more airworthy and more dependable. I think there was extensive evidence. And I'd be happy to recount why we think it's harmless. I do see my time is running down. I did want to just talk about the evidentiary points for a minute, if I may. Go ahead. Thank you. On the 404B point, Your Honor, there was a pretrial hearing before Judge Rogers. The government proffered to file the notice of its intent to offer these various categories of evidence. The court went through the evidence, heard from opposing counsel, and it ultimately concluded that the vast majority of it was indeed 404B. There was one category that was deemed to be intrinsic, but the bulk of it was deemed to be extrinsic. And it was offered, as Your Honor was noting, not to prove propensity, but it was offered to prove knowledge, intent, and, as Your Honor pointed out, who these people were, their membership. Well, they tell me that you didn't introduce it for this really old evidence that would seem to be quite stale to show knowledge or intent as to the boat transactions. They tell me that the government said that was submitted to show knowledge or intent, not to show how the relationship started. Is that an accurate representation of the record? No, it was all of it. It was for multiple purposes that they were offered. Was a jury instructed about that as one ground for consideration of this evidence? Because it is otherwise awfully stale for knowledge or intent evidence. Well, the staleness of it, I think, goes to the weight, not necessarily to the admissibility. I mean, it was old evidence. You said sometime on your 404B one, it's so stale. Fair, but we don't think it's so stale that it should be excluded. We think that's something that you would... Well, it could affect the balance of prejudice as well. I mean, you've got 20-year-old stuff here. It's pretty hard to show that that, way outside the indicted time period for the conspiracy, and that's supposed to show knowledge or intent 20 years later. That seems to me... Well, there was other more contemporary... I wouldn't want to rely on the fact that that would still be admissible. No, I understand. But there was other... I mean, any one of these pieces of evidence, they were all probative to proving issues that were part of the government's burden. I'm telling you, let's assume it's not probative as to knowledge or intent. Was it clear to the jury that one of the grounds for using that information was here's how these folks first met? I don't think it was specifically... I have to double-check, but I know that the court in its pretrial ruling, I believe it said membership as well as knowledge and intent, and I think in the instructions to the jury where they were told that they can't use it to consider bad character, propensity, that he's not on trial for any of these charges,  I don't recall it being easy enough to check. But I know the court said knowledge and intent. Whether it also said membership, I'd have to double-check. But we also think that the court's instructions were more than sufficient to guard against any risk of unfair prejudice. As Judge Silverman has pointed out, typically 404B evidence is offered in these drug cases. It's a common practice. It's been established for many years. Very briefly, opposing counsel also alluded to what he called the expert testimony. This was not expert. These were lay witnesses. The test in this circuit, it's a bright line standard. If they're testifying based on firsthand personal knowledge, it can come in as lay witnesses. I see my time is up. If I might just finish. But as to the Johnson testimony, there's a person, Johnson, do I have my names right? Anton Johnson, yes. Correct. He seemed to be talking not about, oh, I was on the phone call, here's what it meant, that's what I understood it to mean when we were having this conversation. He sort of goes, they have this whole definitional period. You guys understand? What does this term mean? Correct. How is that one not expert evidence? How is that possibly noticeable as just him reciting his own conversations, meanings and understanding? Well, I didn't get the sense from reading his testimony that it was based on his own conversations. And if you look at the record, Judge Jackson, when the issues surfaced, Judge Jackson sort of allowed the witnesses to testify, heard the basis for their proffering, and she made a finding that they were testifying based on firsthand knowledge. She did also instruct the jury that if they found that this wasn't coming from firsthand knowledge, they could disregard the testimony. So I think Johnson, and again, with respect to all these evidentiary issues, certainly the evidence was probative and helpful to the government's case, but if any piece or portions of it were improperly admitted, we think that the errors would have been harmless in any event. A lot of the same words came in through Ferguson, if I'm not wrong. Correct. There were other witnesses, that's right, they dovetailed a lot. So that would demonstrate the harmlessness as well. Could I just ask you one question, and maybe you don't know, because I don't think they've raised this question. Is there a mens rea requirement as to the status of a U.S. airplane being used? I have not seen that issue. It's not raised, and we have not seen that issue litigated. We were discussing this. The government doesn't have a position that you know of? Correct. I don't know if it's a FIOLA-type situation where knowledge wouldn't be required. Wouldn't it be a case where you charge somebody with possession of a machine gun and you have to show that the individual has knowledge that he or she was holding a machine gun? Right. The specific characteristics of the firearm, yes. So you don't think it's like that? Well, I mean, on one hand you have that line of cases, then you also have the old FIOLA case, which I think was assault on a federal officer, and you didn't have to prove that the defendant knew that the individual who he assaulted was in fact... So which line is more appropriate? I don't have an answer to that position, Your Honor. It has not been raised in the briefs. I'm not prepared to stake out a position. At this time, I wouldn't feel comfortable saying that. Well, your position about that introductory material is it's in relationship to extraterritoriality and to the constitutionality of reaching those people. In an interstate commerce case, does the defendant have to know that the gun traveled in interstate commerce, for example, or anything like that? I don't believe so. But in this case, again, we're not... The basis for the jurisdictional, the U.S. hook here, was the U.S. registered aircraft, and there was plenty of evidence that these defendants specifically knew that they weren't just seeking any old aircraft, but they wanted ones that were registered. Maybe I'm confusing. What is it that there was doubt about or uncertainty about? Oh, I believe Judge Millett was asking me if the government has to prove that the defendant had knowledge... or intent to use a U.S. registered aircraft. Well, you just told me the evidence is that they did know that. Then I apologize. No, no, you were answering my questions correctly. You were answering my questions correctly. I wasn't clear to others, I think, but you got it right, as far as I was concerned. Okay, well, I'm sorry if I got wrapped up on the questions. No problem. Any other questions? All right, for all these reasons, we would ask the court to affirm the judgments. Thank you. I take it we're out of time. We'll give each of you two more minutes. Thank you. Excuse me. I do want to follow up on the issue of staleness because I do believe that staleness can, in fact, be dispositive as to admissibility because if a particular act is so far away in time, number one, and maybe most importantly, the defendant has no opportunity to rebut that. The defendant had absolutely no means to rebut something that is alleged to have occurred 25 years ago. So, Mr. Thompson, the event with the boats in the 80s was the government did file a pretrial 404B notice, but it was useless in terms of building a defense to that charge. So what was that evidence introduced for? My position is that it was impermissibly. No, no, but what was it introduced for? Knowledge and intent. Of what? Of participation in a conspiracy to traffic in narcotics. Was it originally introduced as intrinsic evidence and the judge said it wasn't? Is that right? The judge made a decision, I believe it was Judge Roberts, who made the initial decision that it was extrinsic evidence. Right, but did they originally submit it for the purpose that Judge Millett mentioned of showing how they met originally? Yes. Yes, that was part of it. One was more important than the other. It was all those parts. How they met and that Mr. Thompson, and that was argued in closing argument. You want to prove that X has a long-time knowledge, has knowledge of B, X or Y. The fact that they met 25 years ago is not stale. It means they had knowledge of each other. See, I don't see why that is stale. Well, just because they know each other doesn't mean... But they knew each other in a particular context, right? In a particular context. But where I believe that the staleness becomes dispositive is when you factor in Federal Rule of Evidence 403. We talk about how prejudicial is this testimony and that you have no means to challenge it. And I submit that that's where Mr. Thompson, the defendant, was handcuffed to trial. That this evidence was coming in and he simply could not challenge it. Well, of course he could have challenged it. He could have taken the stand and said we didn't know each other in the 1980s. Of course you have a right not to do that. Right. But it's not true that they would not be able to... I mean, you have two defendants. If they didn't want to take the stand themselves, they could have alibis for where they were in the 1980s. They could put on evidence that the people who allegedly said that they knew each other then were liars. I'm not sure why it's not possible to challenge that. Well, I shouldn't say it's not possible, but it's not probable. Because how are you going to find an alibi from 25 years ago, especially someone who's living in Columbia? These alibis don't come up that easily. And if the government's allowed to introduce said evidence and the only way to rebut it is for the defendant to take the stand, I would submit that's burden shifting. And so the defendant should be able to rebut and challenge this evidence without having to take the witness stand himself. Well, you can challenge the credibility of the witness. He did challenge the credibility. That's right. That's partly the way in which you could challenge that. They did challenge it, but there's also their specific offense. Challenging the credibility of a witness is always part of your cross-examination in a case such as this. But also challenging the specific event charged or the specific event alleged, whether it's 404B or Dited, you want to get into that specific offense to show that this person did not commit that offense, not simply based on credibility of the witnesses. And that's where there's prejudice. There was ample other evidence of the relationship between these folks, right? Yes. It wasn't like they just bumped into each other one time. Yes, but I submit based on the record the 404B was the most overwhelming, the most powerful evidence. And again, it showed bad character. I mean, selling narcotics, large amounts of narcotics, hundreds of pounds and kilos by boats amongst different countries, it really painted a very negative picture of Mr. Thompson. And not one that was easily rebuttable. Further questions? Finally, very quickly, we are asking for a remand to develop the 2255 record. I'm sorry. We haven't discussed that. We understand. If the Court has any questions about that, if not, I agree. Any questions on ineffective assistance? Okay. Thank you very much. Just very briefly, Your Honor, I think one thing that's clear about Section 959 is that it is ambiguous. And I think it's ambiguous as to possession of intent to distribute. You know, it's funny. I don't even think it's ambiguous. I'm sorry? I don't even think it's ambiguous. I think you're right. Should I withdraw my view and retreat to ambiguity because you're the person? Let me put it this way, Your Honor. At best, it is ambiguous. And I think if it's unclear, I'm happy to accept your position on it. I should want one. I'm not surprised. But I think all the— Then you've got to deal with harmless error. And you said, I thought you said that you couldn't identify any evidence in this case that went just to possession without also going to distribution. But I think ultimately, as I said, I think it's up to the jury to decide. And I don't think—I think that's an issue that should have gone to the jury. Can you think of a rational basis on which a jury would have found possession with intent to distribute here but not intent to distribute on this record? I mean, there are different offenses, and the jury might have concluded that there was an intent to possess. Well, he had to find intent to possess with intent to distribute. Right. So how could they have found that without finding intent to distribute? I'm struggling with that. All I can say is I think it's possible a jury could have done that. Let me just also briefly— Actually have to find conspiracy to intent to possess with intent to distribute. Right. Correct, Your Honor. And let me just touch very briefly on the conspiracy. By the way, there's no overt acts in this kind of conspiracy, right? This kind of conspiracy does not require an overt act, and none was charged in the indictment. Right. It does not require an overt act. But the point being is I respectfully disagree that Ali has, in the subsequent cases, has foreclosed the argument that we— It doesn't totally foreclose, Your Honor, but the key word is generally. The key word is generally, but I think being faithful to the Supreme Court precedent, if it's not clear that the statute applies outside the U.S., it does not apply outside the U.S. And I think, again— Well, you know, I think pretty—one thing you can say about our cases is it's pretty clear that if the subsequent statute is extraterritorial, that really rebuts the concern about the conspiracy not being extraterritorial, unless there's some other factor. I don't know that I would—I think I respectfully disagree with that. I think in Ali, there was ambiguity, and I realize they also looked at the Charm and Betsy issues in that case. Yeah, but the hostage-taking was treated differently than the other crime. Because the hostage-taking in that case, it was very clear. It was clearly stated there was no ambiguity. It was clearly stated that a conspiracy to take hostages is, per se, extraterritorial reach to the law. But anyway, the later case made clear that there is— that unless there's unusual circumstances, you can conclude that the conspiracy charge is extraterritorial if the substantive charge is extraterritorial. I think that the—Byesta's case, I think it's best to consider that as— I wasn't sure— They were looking at a very narrowly crafted statute which had specific congressional findings. It was all enacted at the same time. And I think in that context, with this Court's conclusion that the conspiracy provision, Congress must have meant that it was clear that Congress had meant that to reach overseas conduct. Here, we're talking about a very broad statute passed over a number of years, and I— But the conspiracy provision is part of a subchapter dedicated to import and export of drugs. So the conspiracy position—this is not a general conspiracy provision in the sense it was in Ali. But it covers, I think, any violation of that subchapter. I think there's also certain registration offenses. Registration, I think, for import and export. It's a little hard. It doesn't have the breadth that a general conspiracy— But I think when it was—the legislation was passed in the 70s, it was a conspiracy provision, but there was no explicit extra-territorial provision. It applied to the import-export and the 959, what was then V1 provisions. So I think it came in with the 959 V1 provisions. And all the other import-export stuff in that subchapter of Title 21. But I think a significant Congress— So why not put it in 959, and why not in 963? Again, the statutory—the rule of interpretation is if you put it in one place and don't put it in the other place, it shouldn't—you should—it doesn't apply in the place where you didn't put the language. All right. We'll take the matter under submission. Mr. Kaplan and Mr. Kirsch, you took this as an appointment to the Court, and we're grateful for your assistance. Thank you. Stand, please.
judges: Garland, Millett, Silberman